**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TINA ZLOTNICK,**

                        **Plaintiff,**                  **1:07-CV-405**
                                                **(GLS/DRH)**

        **v.**

**BISHOP HOWARD HUBBARD,**
**ROMAN CATHOLIC DIOCESE OF**
**ALBANY, CATHOLIC CHARITIES,**
**THE CATHOLIC CAMPAIGN FOR**
**HUMAN DEVELOPMENT, UNITED**
**STATES OF AMERICA, and THE**
**FEDERAL EMERGENCY MANAGEMENT**
**AGENCY,**

                        **Defendants.**

_____

**APPEARANCES:**                   **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Office of John A. Aretakis          JOHN A. ARETAKIS, ESQ.
353 East 54th Street
New York, New York 10022-4965

**FOR THE DEFENDANTS ROMAN**
**CATHOLIC DIOCESE ET. AL:**

Tobin, Dempf Law Firm            MICHAEL L. COSTELLO, ESQ.
33 Elk Street
Albany, New York 12207

**FOR THE UNITED STATES:**

HON. GLENN T. SUDDABY      BARBARA D. COTTRELL
United States Attorney          Assistant United States Attorney
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

In 2007, John A. Aretakis, Esq., filed a diversity complaint on behalf of his client, Tina Zlotnick.  Asserting various state law claims, Zlotnick sued Bishop Howard Hubbard, the Roman Catholic Diocese of Albany, Catholic Charities and various other non-profit organizations, and the Catholic Campaign for Human Development (collectively, the "Church"). (*See* Compl., Dkt. No. 1.)  Alleging no factual or legal basis to do so, she also sued the United States and the Federal Emergency Management Agency ("FEMA") (collectively, "Federal defendants").  (*See id.*)

On May 9, 2007, the Church defendants filed a motion to dismiss, asserting that the court lacked subject matter jurisdiction because Zlotnick was a New York resident and non-diverse party.  (*See* Church Defendants

Mot., Dkt. No. 5.)  On June 1, 2007, the Church defendants filed a

sanctions motion.  (*See* Church Defendants Mot., Dkt. No. 8.)  On June 15,

2007, the Federal defendants moved to dismiss. (*See* Federal Defendants

Mot., Dkt. No. 15.)  After all motions were briefed, the court held a motion

return on September 6, 2007.

During the return, the court dismissed Zlotnick's complaint on

jurisdictional grounds, and granted the Church defendants' Rule 11 motion

for sanctions against Zlotnick's attorney, Aretakis.  *Id.*; *see also* FED. R. CIV.

P. 11.[1]  Pursuant to Rule 11, the court *sua sponte* issued an oral order to

show cause providing notice and an opportunity to be heard by Aretakis as

to why Rule 11 sanctions should not also be imposed on behalf of the

Federal defendants and the court.  (*See* Transcript; Dkt. No. 43.)

Pending are: (1) Zlotnick's motion for reconsideration and recusal

(Dkt. No. 33)[2]; (2) the question of whether additional Rule 11 sanctions

should be imposed against Aretakis; and (3) the extent of all sanctions.

## II. Background

---

[1]For sake of convenience, the court refers to the restyled rule effective December 1, 2007.  There are no substantive changes to the rule in effect during the underlying proceedings.  *See* Advisory Committee Notes (2007).

[2]The court also construes the motion as Aretakis's response to the order to show cause.

3

## A. **The Complaint**

As authorized by Rule 11, Aretakis filed a diversity complaint on

behalf of his client, Tina Zlotnick.  (*See* Compl. at ¶ 8, Dkt. No. 1; *see also*

FED. R. CIV. P. 11(a).)  He, not Zlotnick, signed and filed the complaint.  By

doing so, he certified:

> [T]hat to the best of [his] knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose ...
>> (2) the claims ... and other legal contentions are
>> warranted by existing law or by a nonfrivolous argument
>> for extending, modifying, or reversing existing law or for
>> establishing new law; [and]
>> (3) the factual contentions have evidentiary support or, if
>> specifically so identified, will likely have evidentiary
>> support after a reasonable opportunity for further
>> investigation or discovery ....

FED. R. CIV. P. 11(b).

Aretakis certified that Zlotnick was a resident of New Orleans,

Louisiana.  (*See* Compl. at ¶¶ 1, 12.)  He named the Church defendants as

diverse parties.  (*See id. at* ¶¶ 2-4.)  He also named the Federal

defendants.  (*See id. at* ¶ 7.)

The complaint asserted seven state causes of action: (1) contract,

(*see id. at* ¶ 11); (2) fraud, (*see id. at* ¶ 39); (3) negligence, (*see id. at* ¶

65); (4) detrimental reliance, (*see id. at* ¶ 92); (5) unjust enrichment, (*see*

4

*id. at* ¶ 99); (6) intentional infliction of emotional distress, (*see id. at* ¶ 104); and (7) breach of fiduciary duty, (*see id. at* ¶ 116).[3]

According to the complaint, Zlotnick was a New Orleans resident on August 29, 2005 who suffered the devastation of Hurricane Katrina when she lost all of her worldly possessions, and became destitute. (*See id. at* ¶ 12-15.)[4]  Thereafter, Angel Flights flew her to Albany, New York. (*See id. at* ¶ 16.)[5]  She relocated to Troy, New York - her former residence - and thereafter received what she believed to be charitable donations from the Church. (*See id. at* ¶¶ 16-17.)  Aretakis certified that there was an oral and written contract between Zlotnick and "the defendants," presumably the Church. (*See id. at* ¶ 11.)  For legal consideration, the Church agreed to provide Zlotnick with a safe and acceptable place to live if, as a quid pro quo, she would actively participate with the Church to use her story as a means of soliciting charitable funds. (*See id. at* ¶¶ 18-21, 25-27.)  Aretakis alleged that through publicity, Zlotnick assisted the Church in raising

---

[3]Although the complaint alleged an "eighth cause" of action, the assertion was merely Zlotnick's *ad damnum* request for relief. (*See* Compl.*,* ¶¶ 126-132.)

[4]The court takes judicial notice that after forming on August 23, 2005, Hurricane Katrina made landfall on the Gulf Coast and New Orleans on the morning of August 29.  In U.S. history, Katrina is one of the five deadliest and sixth-strongest hurricanes ever recorded.

[5]The court takes judicial notice that Angel Flights is a non-profit charitable organization consisting, *inter alia*, of former pilots that provide free air transportation for charitable needs.

millions of dollars that could have been used to help Hurricane Katrina

victims.  (*See id. at* ¶ 25.)

Beginning at some unspecified time in 2006 and continuing until

February 2007, the Church no longer needed Zlotnick and breached its

contract with her by issuing unspecified threats and a specific threat to

render her homeless if she did not vacate "the place she was being housed

in, contrary to her contract ...."  (*See id. at* ¶¶ 32-34.)  Ostensibly in support

of this contract claim, Aretakis certified:

> 22.  ... Bishop Howard Hubbard went ... to New Orleans in
> 2006 to raise his profile, attempt to generate positive publicity in
> the wake of the clergy sexual abuse scandal ....
> 23. ... Hubbard has been subjected to vast negative
> publicity for four years regarding the clergy sexual abuse
> scandal and his handling of the same, and also sits on the
> USCCB Ad Hoc Committee on Sexual Abuse of the Clergy.
> The Defendant has spent millions of dollars on legal fees in the
> past four to five years on horrific scandals involving and
> defending the abuse of children by Catholic priests.

(*Id. at* ¶¶ 22-23.)

Zlotnick's fraud claim is incomprehensible in light of the facts Aretakis

cites to support it.  (*See id. at* ¶¶ 38-63.)  In general, the complaint alleges

that Zlotnick was encouraged by the Church to rent housing that exceeded

the amount authorized by FEMA.  Unbeknownst to her, the Church was

reimbursed by FEMA for the excess.  There is no allegation that Zlotnick

suffered any loss.  Rather, she asserts "fraud" because she was used by

the Church to generate money to which it was otherwise not entitled.  A fair

reading of the complaint is the assertion that the victims of the fraud were

FEMA and Hurricane Katrina victims.  (*See e.g., id. at* ¶¶ 42-57.)  In fact,

Aretakis specifically stated as much regarding the federal defendants,

asserting: "The Defendants FEMA and the United States ... are and were

victims ...."  (*Id. at* ¶ 55.)  According to Aretakis, the Church and its

coconspirator - its attorney who was not sued - engaged in criminal acts

and fraud to fund its own operating expenses and "to pay the legal fees of

attorneys for pedophile priests."  (*See id. at* ¶¶ 47, 49, 51, 59-60.)

Zlotnick's negligence claim asserts: the Church assumed a duty to

provide her housing; it breached that duty by attempting to evict her from

Church-sponsored housing; and she suffered mental and physical damage

as a result.  Those allegations are succinctly stated in five paragraphs.

(*See id. at* ¶¶ 65-68, 90.)  Unfortunately, the claim contains an additional

thirteen paragraphs having nothing to do with the claim itself, but asserted

instead to promote Aretakis's personal vendetta against the Church.[6]  (*See id. at* ¶¶ 77-89.)  A sampling of those paragraphs demonstrates the point: the nefarious misuse of FEMA funds by the Church warrants an investigation by the Attorney General and U.S. Attorney (*see id. at* ¶ 78); FEMA funds were commingled and used to silence named victims of sexual abuse by four Catholic priests, two of whom are identified in the complaint, and to protect predatory priests who are pedophiles (*see id. at* ¶¶ 80-82); and under the guise of the First Amendment, the "National Government and elected officials" have conspired to divert public funds to the Catholic Church to support the Church's illegal activities (*see id. at* ¶¶ 84, 86-88).

Zlotnick's remaining four causes of action contain fewer extraneous attacks.  (*See generally id. at* ¶¶ 91-125.)  Nonetheless, it is apparent that the claims focus more on money generated by the Church than harm caused Zlotnick.  (*See e.g., id. at* ¶ 100-01 (unjust enrichment to the Church, but no claim that the money belonged to Zlotnick).)

There is one last remarkable observation about the complaint that

---

[6]The court reaches this conclusion on the basis of Aretakis's recitation of scurrilous and irrelevant facts in this complaint, and his history of doing the same thing in prior litigation.  *See infra*, Part II.B.

has a direct bearing on Aretakis's good faith basis for initiating suit against the federal defendants.  Aretakis certified as follows: "The United States of America is a sovereign nation and FEMA is an agency of same, both are located in Washington, DC, and are Defendants as involved parties, *and it is conceivable that these Defendants are not being sued with respect to liability to the Plaintiff.*"  (*See id. at* ¶ 7 (emphasis added).)

While there is sparse factual support in the complaint for the actual claims, it contains numerous other irrelevant and inflammatory statements regarding the Catholic Church.  For example, it alleges:

> The Defendant Hubbard has been subjected to vast negative publicity for four years regarding the clergy sexual abuse scandal and his handling of same, and also sits on the USCCB Ad Hoc Committee on Sexual Abuse of Clergy.  This Defendant has spent millions of dollars on legal fees in the past four to five years on horrific scandals involving and defending the abuse of children by Catholic priests.

(*Id.* at ¶ 23.)  Quite plainly, the abuse of children by Catholic priests has nothing to do with the alleged injury to Zlotnick.  Even assuming that clergy sexual abuse has some conceivable background relevance to this case–to explain the motivation behind the Church defendants' fund-raising efforts, for instance–the phrasing of the quoted paragraph 23 is unnecessarily provocative.  It is one thing to say that the Church has undertaken to

9

defend priests who are accused of abuse; it is quite another to state that a Church official has "defend[ed] the abuse of children by Catholic priests." As written, Aretakis imputes to Hubbard the monstrous view that abuse itself, as distinguished from an accused abuser, is worthy of defending.

Paragraph 60 of the complaint is also inflammatory in tone.  There, Aretakis levels a scurrilous personal attack at defense counsel, labeling him an "attorney[] for pedophile priests."  (*Id. at* ¶ 60.)  Regardless of whether defense counsel has represented priests convicted of abuse, the words used by Aretakis suggest a personal animus and an intent to demean and insult.  Such attacks have no place in a complaint.  Moreover, the use to which the Church defendants put the funds obtained from FEMA has little or no relevance to Zlotnick's claims.

In a similar vein, there is no relevance to the statement in paragraph 80 of the complaint that "Catholic Charities paid victim Curtis Oathout $150,000.00 in 2002 to keep silent about being sexually abused by at least four Catholic priests, including Fr. David Bentley and others."  (*Id. at* ¶ 80.) Nor was it necessary for Aretakis to assert that "Catholic Charities is also on record of [sic] offering $75,000.00 to Steven Hall as and for a settlement for sexual abuse by Fr. Daniel Tressic."  (*Id. at* ¶ 81.)  Finally, there was no

legitimate basis to include the allegation in paragraph 82 that "Catholic Charities has also engaged in actions to aid, assist and protect alleged pedophiles or predatory priests involved in the clergy sexual abuse scandal." (*Id. at* ¶ 82.)  The inclusion of these allegations in the complaint is absolutely irrelevant to Zlotnick's claims.  The court concludes that their recitation was an intentional effort by Aretakis to use federal civil litigation to further his personal vendetta against the Church.

The court acknowledges that during the motion return, it used hyperbole when describing the percentage of the complaint containing allegations of clergy abuse.  (*See* Transcript at 18; Dkt. No. 43.) Nevertheless, the allegations described in the preceding paragraphs are inappropriate and entirely superfluous, and they are not made any more relevant or appropriate by virtue of the fact that they are fewer in number than the court earlier indicated.

### B. <u>Other Proceedings</u>

Aretakis's conduct in this litigation is substantially consistent with his tactics in prior proceedings involving the Church.  Certain details of those proceedings provide context for the current litigation, insight into Aretakis's motivations and *modus operandi*, and they are relevant to the court's

conclusions regarding sanctions.

Before filing this complaint, Aretakis issued a Press Release publicizing the impending lawsuit.  (*See* Press Release attached as Ex. B to Costello Decl.; Dkt. No. 8.)[7]  Aretakis has previously courted the press in similar circumstances, which behavior contributed, in part, to a Massachusetts court denying him admission *pro hac vice.*  (*See* Decision and Order attached as Ex. W to Costello Decl.)

In *Hoatson v. New York Archdiocese,* No. 05-cv-10467, 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007), Judge Crotty sanctioned Aretakis pursuant to Rule 11, finding that:

> . . . his conduct is sanctionable because it is sloppy and unprofessional; the pleadings are so far removed from adequate that they cannot be said to have been filed in good faith or after a reasonable inquiry; the bulk of the allegations dealing with sexual abuse are wholly irrelevant to the RICO claim, and; the Title VII claim is admittedly without basis in law.

*Id.* at *10.  Judge Crotty determined that Aretakis filed a complaint as part of his stated intention to "continue to humiliate and embarrass the Church," such intention having been manifested in the complaint's "wholly irrelevant, inflammatory, and embarrassing facts concerning defendants

---

[7]Aretakis denies that he held a press conference.  (*See* Aretakis Decl. at ¶ 50; Dkt. No. 18.)  He does not deny having issued the Press Release.

12

and non-defendants alike that have no bearing on the actions brought." *Id.* at *15.  Much of the same can be said of the instant complaint.

Similarly, in *Hall v. Tressic,* 381 F. Supp.2d 101 (N.D.N.Y. 2005), another case involving allegations against the Catholic Church, Judge Hurd found that "[t]he extensive and colorful portrayal of the social and political backdrop to defendants' alleged conduct is essentially irrelevant to the facts of this case."  *Id.* at 108.  Judge Hurd then dismissed the RICO claim in that case.  *Id.* at 113.

In *Doe v. Bertolucci,* Index No. 6731-02 (N.Y. Sup. Ct.), a case involving allegations of sexual abuse against defendant Bertolucci, Aretakis sought the recusal of Judge Hummel, the presiding State Court Judge.  (*See* Decision and Order attached as Ex. G to Costello Decl.) Judge Hummel denied the recusal motion, noting that the arguments and factual recitations offered in support of the motion were "so disingenuous as to be unethical and unbecoming an attorney."  (*Id.* at 4.)  In a subsequent Decision and Order, Judge Hummel warned that Aretakis risked a contempt citation if he again "engage[d] in attacks on the Court which are completely lacking in factual or legal support."  (*See* Decision and Order attached as Ex. H. to Costello Decl. at 13.)

13

In *People v. Allen,* Index No. 203481 (N.Y. County Ct.), Judge Hummel sanctioned Aretakis for repeatedly making baseless motions seeking his recusal.  (*See* Exs. I, J, & K to Costello Decl.)  In imposing sanctions, the court noted that "[a]s a result of Mr. Aretakis's behavior, the court has been subject to a series of affirmations, affidavits and appellate briefs in which counsel repeatedly accused this court of engaging in criminal behavior, none of which is true, and Mr. Aretakis knew it was untrue at the time that he made it."  (*See* Hearing Transcript attached as Ex. K to Costello Decl., at 68.)

In *Holy Cross Church v. Aretakis,* Index No. 5414-05 (N.Y. Sup. Ct.), the court entered a preliminary injunction enjoining certain picketing and protesting activities in which Aretakis had been engaged on and near Holy Cross Church property.  (*See* Decision and Order attached as Ex. N to Costello Decl.)  The court wrote that Aretakis's "professional and personal conduct has been so unseemly, so provocative, so taunting, so unsettling to decent people, so manipulative, and in the case of stepping off the sidewalk in front of a car leaving church, so dangerous, that the court must intercede and cause a further separation and distance to be placed between Mr. Aretakis and the church and its parishioners." (*Id.* at 72.)  In

14

*Holy Cross,* as he has in other cases, Aretakis sought the recusal of the presiding judge, but to no avail.  (*See id.* at 19-21, 70-71.)[8]

Finally, in *Bouchard v. New York Archdiocese,* No. 04-cv-9978, 2006 WL 1375232 (S.D.N.Y. May 18, 2006), another case in which Aretakis represented an alleged victim of clergy sexual abuse, the court ordered that in light of the "tenor of some of the prior correspondence of Plaintiff's counsel in this case," any depositions of Church officers, agents, or employees were to take place in the presence of and under the supervision of a magistrate judge.  *Id.* at *9.

## C.  Procedural History

Lest there be any confusion regarding the somewhat complicated procedural posture of this case, the court deems it prudent to set forth the issues which are currently pending.

First, it appears from language in Aretakis's submissions that he is under the impression that a $10,000 fine has already been levied against him as a judicial sanction.  (*See* Aretakis Decl. at ¶ 46; Dkt. No. 33 ("As a

---

[8]Aretakis contests the relevance of *Holy Cross* on the grounds that the decision is under review because Judge Spargo should not have heard the case due to an OCA Order that restricted his ability to handle cases involving attorney Stephen Coffey.  (Aretakis Decl. at ¶¶ 30-31; Dkt. No. 18.)  However, while Aretakis may "believe[] that the entire case will be dismissed," (*id.* at ¶ 31), he does not suggest that the decision has in fact been vacated.

result of the *sua sponte* order to show cause, to which I had no prior

notice of, the Court imposed a $10,000 fine.").)  This is inaccurate.  During

the motion return, the court explained that it was granting the Church

defendants' request for sanctions in the form of reasonable attorney's fees

and costs.  (Hearing Transcript at 20; Dkt. No. 43.)  The reasonable

attorney's fees and costs of the Church defendants represents the full

extent of the sanctions actually imposed during the motion return, and

Aretakis was given a post-return opportunity to respond to the amount of

those fees and costs.  However, because the court believed that additional

sanctions might be warranted, it issued an order to show cause as to: (1)

why a $10,000 fine should not be imposed, as a judicial sanction; and (2)

why Aretakis should not also be sanctioned in the form of the reasonable

attorney's fees and costs of the United States.  (*See* Transcript at 21; Dkt.

No. 43.)[9]  The instant Memorandum Decision and Order addresses

---

[9]The court adopted this procedural mechanism – *i.e.*, an order to show cause –
precisely because it did not wish to sanction Aretakis without giving him advance warning and
an opportunity to respond.  *See* FED. R. CIV. P. 11(c) ("If, after notice, and a reasonable
opportunity to respond ...").  Thus, contrary to his assertions, Aretakis was given notice and an
opportunity to be heard on the issue of additional sanctions.  As to the sanctions actually
imposed at the September 6 hearing, Aretakis had the opportunity to respond to the Church
defendants' motion for sanctions prior to the hearing, and, in fact, he did respond.  (*See*
Aretakis Decl. at ¶¶ 15-63; Dkt. No. 18.)  He characterized his own response to the motion for
sanctions as a "general[]" response "to some claims made and documents submitted" (*see id.*
at ¶ 15) and stated that he did not believe he should "have to defend and address the patently
irrelevant, prejudicial and improper exhibits the Defendants have placed before this Court."  (*Id.*
at ¶ 16.)  Additionally, he wrote that "[t]ime constraints and the false arguments made by

whether these additional sanctions should be imposed, and constitutes a

further exposition of the rationale for all sanctions.  As well, it fixes the

amount of the total sanctions.

So too, this Memorandum Decision and Order addresses the

following Aretakis motions:  (1) judicial recusal or, alternatively, disclosure

of any relationships or conflicts or potential conflicts of interest; (2)

reconsideration and vacatur of the September 6, 2007, order, and

permission for Zlotnick to replead; (3) a stay of enforcement of the

payment of any sanctions pending appeal; (4) permission to amend the

caption to allow Aretakis to be a named appellant; and/or (5) a waiver of

the posting of a bond pending appeal.  (*See* Dkt. No. 33.)

### III.  Discussion

#### A.  Recusal

Aretakis seeks the court's recusal pursuant to 28 U.S.C. §§ 144 and

---

Defendants preclude[d] [him] from responding in greater detail."  (*Id.* at ¶ 15.)  However, Aretakis's own dim view of the merits of the sanctions motion has no bearing on due process and the opportunity to be heard.  Moreover, there is no merit to Aretakis's claim that he had "no prior notice" that the court would take up the issue of sanctions at the September 6 hearing. (*See* Memorandum of Law at 4; Dkt. No. 33.)  After all, the Church defendants had formally moved for sanctions, and such motion was scheduled to be heard on September 6.  (*See* Text Only Notice of Hearing, dated August 14, 2007.)  Lastly, the court is mindful that Aretakis attempted to evade the substantive aspects of the Church's motion completely, including the issue of sanctions, requesting that the court focus solely on the diversity issue at the motion return.  (*See* Aretakis 6/05/07 Ltr.; Dkt. No. 13.)

455.  Section 144 requires recusal if a judge harbors a "personal bias or

prejudice" against a party.  28 U.S.C. § 144.  Similarly, § 455(b)(1)

provides for recusal when a judge "has a personal bias or prejudice

concerning a party."  28 U.S.C. § 455(b)(1).  Finally, recusal is mandated

under § 455(a) when a judge's "impartiality might reasonably be

questioned."  28 U.S.C. § 455(a).[10]  A recusal decision rests within the

sound discretion of the judge whose recusal is sought.  *See United States*

*v. Lovaglia,* 954 F.2d 811, 815 (2d Cir. 1992) (citation omitted).

As evidence of bias, prejudice, and/or impartiality, Aretakis

references, in the main, the following factors: (1) the court's description of

the allegations in the Complaint as "absurd"; (2) the court's imposition of

unreasonably harsh sanctions, including the sanction of attorney's fees,

which was not requested by the defendants; (3) the court's failure to

disclose any conflicts; and (4) the court's inaccurate statement to the

effect that three-quarters of the Complaint dealt with sexual abuse.  (*See*

*generally* Aretakis Decl.; Dkt. No. 33.)  He also alleges in more general

---

[10]Aretakis also makes reference to 28 U.S.C. § 452(b)(5)(iii), which provides for recusal when "[the judge] or his spouse, or a person within the third degree of relationship to either of them . . . is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."  28 U.S.C. § 452(b)(5)(iii).  The court cannot fathom how this section is relevant.

terms that the court "repeatedly gave indications and made statements that it had contempt, bias or prejudice for Plaintiff's counsel" and that the court's "judicial temperament was also indicative of bias and prejudice." (*Id.* at ¶¶ 23, 24.)

In light of the corresponding language used in the two sections, courts have concluded that sections 144 and 455(b)(1) are similar in scope and are to be construed together. *See Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir. 1987). The standard for recusal under both sections is "whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Id.* Significantly, "[t]he alleged bias and prejudice to be disqualifying must stem from an *extrajudicial source* and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966) (emphasis added); *see also Apple,* 829 F.2d at 333 (noting that the analysis "looks to extrajudicial conduct as the basis for making such a determination, not conduct which arises in a judicial context"). In this case, there is no evidence of – and the court affirmatively disclaims the existence of – any bias or prejudice stemming from an

extrajudicial source. Aretakis offers nothing more than rank speculation on this point. The court acknowledges having made remarks which are fairly characterized as evidencing impatience and frustration with Aretakis. In particular, the court's use of hyperbole when describing the percentage of the complaint devoted to irrelevant accounts of clergy abuse was perhaps intemperate, not to mention plainly inaccurate. To the extent the court became exercised during the motion return, however, it was based upon its view of the case and Aretakis's conduct in connection with the case, not upon an extrajudicial bias, prejudice, or impartiality. Aretakis claims that the court must have "made a determination or prejudged issues before ascertaining the facts or [his] answer to a question." (Aretakis Decl. at ¶ 5; Dkt. No. 33.) The court had read the parties' submissions and digested their positions prior to the motion return. The court routinely does so before every motion return, and naturally reaches tentative conclusions, subject to change depending on the oral advocacy. But this is no proof of a preexisting and extrajudicial bias or prejudice warranting recusal under sections 144 and 455(b)(1). *See Liteky v. United States,* 510 U.S. 540, 551 (1994) (noting that a judge is not recusable for bias or prejudice where "his knowledge and the opinion it produced were

20

properly and necessarily acquired in the course of the proceedings").[11]

Nor is recusal mandated by 28 U.S.C. § 455(a).  The Second Circuit has held that although section 455(a) provides "broader grounds for disqualification" than either section 144 or section 455(b)(1), "[w]hen . . . a party has not alleged any grounds for recusal other than those relating to the district court's alleged bias or prejudice, those broader grounds are not implicated." *Apple,* 829 F.2d at 333.  The court interprets this language to mean that allegations of bias and prejudice that are insufficient to justify recusal under sections 144 and 455(b)(1) are likewise insufficient to require recusal under section 455(a).[12]  Accordingly, for the reasons articulated, Aretakis's allegations of bias and prejudice do not warrant recusal under section 455(a).

However, Aretakis has also alleged a "broader ground" for disqualification under section 455(a), namely the court's alleged prior

---

[11]In *Liteky,* the Court went so far as to say that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality charge." *Liteky,* 510 U.S. at 555.

[12]In *United States v. Sibla,* 624 F.2d 864 (9th Cir. 1980), cited with approval in *Apple,* 829 F.2d at 333, the court applied the same analysis to sections 144, 455(a) and 455(b)(1) when the plaintiff had not alleged grounds for recusal "other than those relating to bias or prejudice stemming from the district judge's courtroom remarks."  *Sibla,* 624 F.2d at 867.

employment with the Department of Justice.[13]  The test for recusal under

section 455(a) is whether "a reasonable person, knowing all the facts,

[would] conclude that the trial judge's impartiality could reasonably be

questioned." *Lovaglia,* 954 F.2d at 815.  The court has not the slightest

hesitation in saying that its impartiality cannot reasonably be called into

question by virtue of its former employment with the Department of

Justice.  Indeed, such an assertion borders on the absurd; if it were true,

the court would be required to recuse itself in virtually every case in which

the United States was a party, including all criminal and social security

cases, among others.[14]  There is absolutely no legal, rational or pragmatic

reason supporting recusal, and the court declines to do so.

Lastly, not only is Aretakis's recusal motion baseless, but it also

reflects a repetitive tactic employed by him; namely, challenging the

integrity of judges who have called him to task regarding his

unprofessional behavior in litigation involving the Church.  Rather than

---

[13]For clarity's sake, this court was employed by the Department of Justice from 1982 to 1997 and occupied the following positions in the United States Attorney's Office for the Northern District of New York: U.S. Attorney; Supervisory Assistant U.S. Attorney; and Senior Litigation Counsel.  The court was appointed Magistrate Judge in 1997 and District Court Judge in 2004.

[14]The court has always recused itself from matters involving the United States as a party when such matters were pending during the court's employment.  Naturally, such matters are now rare given the lapse of eight years.

address his own behavior, he typically responds with a baseless judicial

attack.  Once again, he has done so, and thereby provided one more

reason to impose sanctions, albeit pursuant to the court's inherent

authority not that of Rule 11.

### B.  <u>Motion for Reconsideration and Sanctions</u>

The court turns to Aretakis's motion for reconsideration, including

the propriety of imposing additional sanctions in the form of the attorney's

fees and costs of the United States and a $10,000 fine.[15]

A strict standard governs motions for reconsideration.  They "will

generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked - matters, in other words, that

might reasonably be expected to alter the conclusion reached by the

court."  *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).

Courts have recognized three grounds upon which a motion for

reconsideration may be granted: (1) an intervening change in controlling

law, (2) the availability of new evidence not previously available, or (3) the

need to correct a clear error of law or prevent manifest injustice.  *See C-*

---

[15]Again, the possible imposition of these additional sanctions was raised by oral order
to show cause at the motion return.

*TC 9th Ave. P'Ship v. Norton Co. (In re C-TC 9th Ave. P'Ship),* 182 B.R. 1,
3 (N.D.N.Y. 1995) (citations omitted).  Aretakis relies primarily on the third
of these factors.

Before addressing the merits of his motion, the court must ascertain
its target.  In the Notice of Motion, Aretakis indicates that he is seeking
"reconsideration of or to vacate its prior order and decision of September
6, 2007, to allow the Plaintiff to replead."  (Notice of Motion; Dkt. No. 33.)
However, the Memorandum of Law submitted in support of the motion for
reconsideration addresses only the issues of sanctions and recusal.[16]
Accordingly, the court believes the motion addresses the imposition of
sanctions, not the dismissal of the case.

Nonetheless, even if the motion sought reconsideration of the
merits, it would be denied because Aretakis has cited no authority to
support such a request, nor has he cited any error of law or fact.  More
importantly, he clearly misunderstands the legal basis for the dismissal in

---

[16]The Memorandum of Law touches ever-so-briefly on the propriety of the complaint's
dismissal.  (*See* Memorandum of Law at 3; Dkt. No. 33 ("The Court went on to find that it had
no diversity jurisdiction, and yet it still went forward and dismissed all of the particular
claims.").)  However, the balance of the brief, including the entirety of the "Argument" section
focuses exclusively on the issues of sanctions and recusal.  (*See, e.g.,* Memorandum of Law at
4; Dkt. No. 33 ("It is submitted that the Court overlooked the legal principles involved in the
position [sic] of sanctions, legal fees and findings of frivolous actions by the Plaintiff's
counsel.").)

the first place.  Zlotnick's complaint asserts only state law claims.  There is

no federal claim.  Aretakis conceded in the complaint itself that he had no

basis to impose liability on either the United States or FEMA for any harm

suffered by Zlotnick, he failed to articulate any basis for federal liability

during the motion return, and he still offers no authority in his post-return

response.  The only jurisdictional basis asserted was diversity -  the first

subject discussed with Aretakis during the return. (*See* Transcript at 3-15,

18-19; Dkt. No. 43.)  While it is true that the court recited a litany of legal

deficiencies in the state law claims, the dismissal was predicated on

jurisdictional grounds - the failure of Zlotnick to establish diversity.

Repleading her state law claims would not cure the jurisdictional defect.

      As to the court's jurisdictional ruling, there is no clear error or

manifest injustice.  Citing *Palazzo ex. rel. Delmage v. Corio*, 232 F.3d 38,

42 (2d Cir. 2000) and *National Artists Management Co. v. Weaving*, 769

F. Supp. 1224, 1228 (S.D.N.Y. 1991), the court concisely articulated the

controlling law during the return.  (*See* Transcript at 4; Dkt. No. 43.)

Zlotnick's diversity hinged on her ability to prove citizenship by

establishing Louisiana as her domicile.  Domicile is a mixed question of

law and fact for the court's determination, and evidence pertinent to that

determination may be gathered by testimony, deposition, affidavit or other factual submissions.  When the residence of the party asserting diversity is unclear, or when there is evidence indicating that the party has more than one residence, the court should focus on the party's intent.  To determine intent, a party's entire course of conduct may be taken into account, and the party's own statements concerning intent are of lesser weight when they are contradicted by facts demonstrating a contrary intent.  Relevant factors include the place where:  civil and political rights are exercised; taxes are paid; real and personal property are located; driver's and other licenses are obtained; bank accounts are maintained; and, family is located.

At the hearing, the court specifically asked Aretakis whether he concurred with the court's legal analysis to the extent that Zlotnick's domicile was a decision for the court.  Aretakis concurred.  (*See* Transcript at 3-4, 7; Dkt. No. 43.)[17]  Thereafter, for reasons fully documented in the record, the court resolved the dispute and found that Zlotnick was domiciled in New York.  Accordingly, there was no diversity, and no

---

[17]At page 7, the following colloquy occurred: "The Court: ... she either is a citizen of Louisiana or she's not.  Because if she's not, there's no jurisdiction for this lawsuit.  Do you concede that?  Mr. Aretakis: I would agree with that ...."

jurisdictional basis for Zlotnick to federally pursue her state claims.

Aretakis offers no argument in his "motion to replead" that would

circumvent the failure to establish diversity jurisdiction.  Accordingly, there

is no argument that would cause the court to reconsider its ruling even if it

alternatively construed Aretakis's motion as seeking that relief.

As to the imposition of sanctions, and for the reasons set forth

below, the court declines to vacate those already imposed.  Moreover, the

court believes that additional sanctions are warranted, although not in the

full amount proposed during the return.

"Under Fed.R.Civ.P. 11, sanctions may be imposed on a person

who signs a pleading, motion, or other paper for an improper purpose

such as to delay or needlessly increase the cost of litigation, or does so

without a belief, formed after reasonable inquiry, that the position

espoused is factually supportable and is warranted by existing law or by a

nonfrivolous argument for the extension, modification, or reversal of

existing law." *Caisse Nationale de Credit Agricole-CNCA, New York

Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994).  An argument

constitutes a frivolous legal position for purposes of Rule 11 sanctions if,

under an "objective standard of reasonableness," *Derechin v. State*

*University of New York*, 963 F.2d 513, 516 (2d Cir.1992); *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991), it is "clear ... that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands," *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990), *cert. denied*, 498 U.S. 1028 (1991); *see also Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 626 (2d Cir.1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success.") (internal quotes omitted).  "However, a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."  FED.R.CIV.P. 11, Advisory Committee Notes for 1993 Amendments.

In addition, Rule 11 requires that an attorney sign every pleading or other paper filed with the court. The signature "certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus.*

*Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 542 (1991).

In other words, Rule 11 is intended to ensure that an attorney will "stop,

think and investigate" before filing "baseless papers.*" Cooter & Gell v.*

*Hartmax Corp.*, 496 U.S. 384, 398 (1990).

When a district court determines that Rule 11(b) has been violated, it

may impose sanctions.  FED.R.CIV.P. 11(c).  Both monetary and

non-monetary sanctions are permitted.  FED.R.CIV.P. 11(c)(2).  In

fashioning a sanctions order, the Advisory Committee notes suggest the

following considerations: (1) whether the improper conduct was willful or

negligent; (2) whether it was part of a pattern of activity, or an isolated

event; (3) whether it infected the entire pleading, or only one particular

count or defense; (4) whether the person has engaged in similar conduct

in other litigation; (5) whether it was intended to injure; (6) what effect it

had on the litigation process in either time or expense; (7) whether the

responsible person is trained in law; (8) what amount, given the financial

resources of the responsible person, is needed to deter that person from

repetition in the same case; and (9) what amount is needed to deter

similar activity by other litigants. See Rule 11(c) Advisory Comm. Notes

(1993).

29

However, separate from Rule 11, a district court has the inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons.  See *Sassower v. Abrams*, 833 F. Supp. 253, 272 (S.D.N.Y.1993). The court's inherent power to sanction stems from the very nature of the courts and their need to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.  *Id.*  Additionally, 28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

"To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith-that is, 'motivated by improper purposes such as harassment or delay.' "  *Eisemann v. Greene,* 204 F.3d 393, 396 (2d Cir. 2000).  There must be a showing of subjective bad faith on the part of the offending attorney.  *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir.1997).  However, bad faith "can be inferred when the attorney's actions are so completely without merit as to require the

conclusion that they must have been undertaken for some improper purpose such as delay." *Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir.1996) (internal quotation marks omitted).  In general, Rule 11 sanctions should be imposed with caution, *MacDraw Inc. v. CIT Group Equipment Financing Inc.*, 73 F.3d 1253, 1257 (2d Cir.1996), and "should not be imposed so as to chill creativity or stifle enthusiasm or advocacy." *Kirschner* v. *Zoning Bd. of Appeals of Incorporated Village of Valley Stream*, 159 F.R.D. 391, 395 (E.D.N.Y. 1995).  Yet, attorney creativity may not transcend the facts.  *Levine v. F.D.I.C.*, 2 F.3d 476 (2d Cir. 1993).

The question of whether or not a signer of a filing has violated Rule 11 is determined by an objective standard of reasonableness.  *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 548 (1991); *MacDraw*, 73 F.3d at 1257.  "Subjective good faith provides no safe harbor."  *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985). This inquiry must focus on conduct of the parties and their counsel at the time of the submission.  *D'Orange v. Feely*, 877 F. Supp. 152, 160 (S.D.N.Y.1995). "However, a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed or submitted to the court, but include reaffirming to the

court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." FED.R.CIV.P. 11, Advisory Committee Notes for 1993 Amendments.

Under the objective standard, in order to warrant an award of Rule 11 sanctions on the basis that a complaint is not grounded in fact or law, "it must be 'patently clear that a claim has absolutely no chance of success.' " *Sussman v. Bank of Israel*, 56 F.3d 450, 457 (2d Cir.1995). As already stated, an attorney signing a complaint certifies that he has conducted a reasonable inquiry under the circumstances, and that a claim is not for an improper purpose, that it is warranted by existing law or a non frivolous modification or reversal of existing law, and that it has evidentiary support. See FED.R.CIV.P. 11(b). " 'An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear ... that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.' " *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir.1995), (citation omitted).

Here, Aretakis has advanced three primary arguments in favor of reconsideration and against the imposition of sanctions. He argues that:

32

(1) the case was a pro bono referral from the Albany County Bar Association, and severe sanctions will deter attorneys from taking such pro bono cases; (2) Zlotnick had already made up her mind that she wanted to sue all the defendants prior to talking to Aretakis; and (3) the court made a mistake of fact when it thought that seventy-five percent of the complaint was devoted to irrelevant allegations of clergy sexual abuse. With respect to the imposition of further sanctions in the form of the Federal defendants' attorney's fees and a judicial $10,000 fine, Aretakis argues that: (1) the "sua sponte order to show cause denied the Plaintiff and Plaintiff's counsel fundamental rights and procedures and did not adequately give notice of allegations of improper action of the Plaintiff's counsel" (Memorandum of Law at 5; Dkt. No. 33.); and (2) the "sua sponte order to show cause and directive for the Justice Department to seek and make an application for attorney's fees, even though this Defendant did not seek this relief in its dismissal motion was a denial of due process and was indicative of bias and/or a prejudice."  (Aretakis Decl. at ¶ 49; Dkt. No. 33.)  The court turns to a discussion of these contentions and other

sanction factors.[18]

As suggested in the preceding footnote, the sanction arguments overlap.  Nonetheless, there are fundamental Rule 11 differences between the Church and Federal defendants.  Summarizing, there is no good faith legal or factual basis for the suit against the Federal defendants.  While the potential legal and factual basis for suit against the Church is at least arguable, the complaint contains scurrilous allegations asserted in bad faith against the Church and its attorney that have absolutely no bearing on Ms. Zlotnick's case.

As for the Federal defendants, Mr. Aretakis has never offered - either orally during the return or in his post-return response - a rational legal or factual basis for having sued them in the first place.  As a licensed attorney trained in the law, he filed and signed the complaint.  By doing so, he certified: first, that he had conducted a reasonable inquiry under the circumstances and that the claims lodged against the Federal defendants

---

[18]The court has endeavored to separate Aretakis's arguments relating to sanctions already imposed from those relating to additional sanctions.  However, the arguments overlap to some extent.  So too, the task of organizing and categorizing the arguments has been made more difficult due to the fact that those concerning sanctions are improperly made in the context of Aretakis's affirmation, as opposed to his memorandum of law.  *See* N.D.N.Y. R. 7.1(a)(2) ("An affidavit must not contain legal arguments but must contain factual and procedural background as appropriate for the motion being made.").  The memorandum of law itself contains only a very brief discussion of sanctions.  (*See* Memorandum of Law at 4-5; Dkt. No. 33.)

were warranted by existing law or a non frivolous modification or reversal

of existing law; second, that the suit was not instituted for improper

purposes; and third, that the suit had evidentiary support.  Despite his

certification and despite the opportunities afforded him both during the

return and after, he has still failed to offer any rational legal theory

supporting the suit.

Moreover, he has articulated no factual support for whatever

conceivable legal theory he believes might exist.  When asked to explain

the factual basis during the return, he responded: "... based on information

... some of which is just in the general public knowledge and purview of

hundreds of newspaper articles that have been written about Hurricane

Katrina and FEMA.  What I have concluded, based upon my own

knowledge of this case and what I have read, is that the United States

Government and FEMA has wasted a lot of money ...."  (*See* Transcript at

12-13; Dkt. No. 43.)  That comment prompted the court to respond:

"Congratulations.  Why don't you run for the Senate or President of the

United States and do something about it.  What is it you've alleged in this

complaint that makes the United States and FEMA liable for any of the

absurd allegations you've got here? ... You cited no statute, you've cited

no authority.  There's not one fact that suggests liability.  You've

suggested nothing and you concede ... there may be no liability." (*Id.* at

12-13.)  The latter comment, of course, referred to his remarkable

statements in the complaint that the Federal defendants were victims of

the Church's fraud, and were not liable to Zlotnick.  (*See* Compl. at ¶¶ 7,

55)  The court's suggestion that Aretakis run for either President or the

Congress was meant to convey that the appropriate place to register his

personal complaints about FEMA's role in Hurricane Katrina was either

with the Executive or Congressional Branches of government, either of

which might be able to respond.  However, it is absolutely *improper* for a

trained lawyer to file a bogus federal law suit in an effort to vent about his

personal dissatisfaction with government.  Furthermore, if a client wishes

to file a bogus law suit, it is the responsibility of a trained professional to

dissuade her from doing so.  And, it is certainly his responsibility to refrain

from intentionally joining the endeavor.

As for the Church defendants, the court has already recited the

scurrilous allegations concerning sex abuse, the identification of specific

priests as sexual predators, and other sundry allegations that have

absolutely nothing to do with the lawsuit, including an ad hominem attack

on defense counsel.  Furthermore, the court noted during the return that those scurrilous allegations accompanied substantive state law claims that had little, if any, legal merit although the court did not definitively rule on the substance of those claims.

In response, Mr. Aretakis seeks to excuse his conduct because he represented Zlotnick *pro bono*, and blames her for the legal advice he rendered.  (*See* Aretakis Declaration, Dkt. No. 33-2.)  As for his *pro bono* service, he has submitted an affidavit from the Executive Director of the Albany County Bar Association's Legal Referral and Pro Bono Program who essentially extols the virtues of *pro bono* representation.  (*See* Davis Aff., Dkt. No. 33-4.)  The court fully recognizes that *pro bono* representation of indigent clients is one of the most laudable services a true professional can provide.  Accordingly, a court should exercise great care before sanctioning a *pro bono* attorney.  Nonetheless, and as Ms. Davis observes, Mr. Aretakis undertook the representation of Ms. Zlotnick in connection with state eviction proceedings.  (*See id.*)  There was nothing in the assignment and nothing in Ms. Zlotnick's legal dilemma that should have caused Mr. Aretakis to highjack her litigation for his own personal reasons.

Lastly, Mr. Aretakis asserts that he has been denied due process, essentially because he did not receive fair notice of the court's intention to sanction and an opportunity to respond.  His argument is belied by the facts, and rests on his myopic view of the record.  As the court has detailed, the Church defendants filed their sanctions motion before the motion return, Mr. Aretakis was provided ample notice and an opportunity to respond, he was directed to respond by the court, and he did so.  Consistent with the dictates of Rule 11, the court *sua sponte* raised the issue of additional sanctions at the motion return by oral order to show cause, articulated the basis for the sanctionable conduct, permitted all defendants to file or supplement their responses, and then provided Mr. Aretakis with ample opportunity to respond to all sanctions issues.  The court cannot discern a due process violation from these facts, nor has Mr. Aretakis articulated a due process theory in support of his conclusory allegation.

For the reasons articulated, the court concludes that Mr. Aretakis, a trained lawyer, willfully initiated suit against the Federal defendants with no basis in law or fact to believe they were liable to Ms. Zlotnick.  As to the Church defendants, the court concludes that:  Mr. Aretakis willfully

included scurrilous allegations in the complaint that were completely and objectively irrelevant to any potential legal claim; he subjectively did so in bad faith because he was motivated by his own personal disenchantment with the Church's involvement in unrelated sexual abuse matters and because he intended to injure the Church defendants, including their lawyer; his Rule 11 violations reflect a repetitive pattern of such violations, as demonstrated by other judicial rulings in earlier filed suits; he has been undeterred in the repetition of such conduct; and, punitive measures are necessary to deter future conduct, especially since past verbal and monetary sanctions failed to deter his conduct in this case.  Mr. Aretakis has further compounded his sanctionable conduct by filing a baseless motion for recusal, again consistent with the same unprofessional pattern of activity demonstrated in past cases where his conduct has been questioned.

In summary, the court declines to reconsider the imposition of sanctions in the form of the Church defendants' reasonable attorney's fees.  The court imposes additional sanctions in the form of the Federal defendants' reasonable attorney's fees.  Furthermore, this decision serves as a written warning that the court will not tolerate sanctionable conduct by

Mr. Aretakis in any future litigation before this court.  Furthermore, the court directs the Clerk to forward a copy of this decision to Chief Judge Mordue for whatever consideration the Board of Judges may feel is warranted under the Northern District's Local Rules related to disciplinary conduct.  Because the court believes that the verbal warning and the financial sanction of attorneys' fees are sufficient to deter future conduct by Mr. Aretakis, it imposes no additional judicial monetary sanction.

## C.   Amount of Attorney's Fees and Costs

Having determined that sanctions are appropriate in the form of the defendants' attorney's fees and costs, the court must fix the amount of such sanctions.  In determining an appropriate attorney's fee, courts within the Second Circuit apply the "presumptively reasonable fee analysis." *Porzig v. Dresdner, Kleinwort, Benson, North America LLC,* 497 F.3d 133, 141 (2d Cir. 2007).  This analysis "involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award."  *Id.* (citations omitted).

According to the United States, it has expended $2,350 in attorney's fees and $18.26 in costs in connection with this case.  (*See* Cottrell Aff.;

Dkt. No. 32.)  The attorney's fees calculation is based on an hourly rate of

$94; the costs are attributed to obtaining the transcript of the motion

return.  (*See id.*)  Aretakis has taken no position with respect to the

accuracy or reasonableness of the fees and costs set forth in the Cottrell

Affidavit.  Upon review of the Cottrell Affidavit, the court deems both the

number of hours spent on this matter and the hourly rate to be

reasonable.[19]  Accordingly, the United States is awarded attorney's fees

and costs in the amount of $2,368.26, to be paid by Aretakis.

The Church defendants assert that they have incurred $14,310 in

attorney's fees in connection with this matter.  (*See* Costello Aff.; Dkt. No.

31.)  This figure reflects 61 hours of work by Michael Costello, a senior

attorney who has been admitted to practice for thirty-three years, at a rate

of $210 per hour, and 10 hours of work by Stephen Hayford, a junior

attorney with approximately five years of experience, at a rate of $150 per

hour.  (*See id.*)  The work performed by these attorneys is set forth in

some detail in the Costello Affidavit.  (*See id.*)  Aretakis objects to the

reasonableness of the Church defendants' attorney's fees.  According to

---

[19]In fact, the hourly rate of $94 is arguably below market for an attorney with Ms.
Cottrell's experience.  *See NLRB v. Local 3, Int'l Bhd. of Elec. Workers,* 471 F.3d 399, 407 (2d
Cir. 2006) (noting that "district courts in this Circuit generally employ market rates to calculate
awards of government attorneys' fees").

Aretakis:

> . . . the Memorandum of Law to dismiss [sic] and for sanctions are [sic] a boiler plate memorandum and string cites with the same cases the Defendant has recited over and over again in numerous motions or memorandum of law in other cases.  I allege that the Defendant did not do significant additional research with respect to most of its two memorandum of law and under oath I believe Mr. Costello may concede to same.  For the most part, I am alleging the legal research and briefs to which Mr. Costello asks this Court to award him are file briefs that have been submitted in other cases.  Stating that the Defendants spent 20.75 hours to research diversity and related issues is excessive, not reasonable and designed to overly inflate the Defendants' claim of legal fees.

(Aretakis Decl. at ¶ 54; Dkt. No. 33.)  Additionally, it is Aretakis's belief that counsel for the Church defendants has "inflated his time and unnecessarily included the time spent on the eviction in his papers."  (*Id.* at ¶ 13.)

Notwithstanding Aretakis's speculation to the contrary, the court has no reason to doubt the good faith or authenticity of the time records submitted by the Church defendants.  Nor does the court believe that the 20.75 hours spent on the motion to dismiss were excessive, as the motion was detailed and well-crafted.  On the other hand, the court does question the necessity of spending 24 hours on the motion for sanctions.  From the court's review of *Hoatson v. New York Archdiocese,* No. 05-cv-10467,

42

2007 WL 431098 (S.D.N.Y. Feb. 8, 2007), it appears that similar arguments were made in support of sanctions in that case.  Thus, the court finds that Costello, who was involved in the *Hoatson* case, should have been able to draft the sanctions motion more expeditiously.

It would be difficult to say with precision how many hours it "should" have taken to draft the sanctions motion.  Fortunately the court need not embark on such an inquiry.  *Hoatson*, again, is instructive.  In that case, the court observed that the point of Rule 11 sanctions is not to compensate or reimburse the defendants for the totality of their losses, but rather to punish and to deter future similar conduct.  *See Hoatson,* 2007 WL 431098, at *16.  Thus, it is enough for the court to say here that it believes the requested attorney's fees of $14,310 are excessive.  In *Hoatson,* the court awarded sanctions in the amount of $8,000, believing that this amount would be sufficient to deter repetition of similar conduct.  *Hoatson,* 2007 WL 431098, at *16.  Evidently, it was not.  Therefore, while a sanction of $14,310 in attorney's fees is too high, $8,000 is too low.  Accordingly, the court awards the Church defendants attorney's fees of $10,000, to be paid by Aretakis.

### E. <u>Miscellaneous</u>

43

In anticipation of appeal, Aretakis requests that the court stay enforcement of the payment of any sanctions pending appeal, waive the posting of a bond pending appeal, and amend the caption to allow him to be a named Appellant.

With regard to the caption, amendment is unnecessary.  Rule 3 of the Federal Rules of Appellate Procedure provides that the notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption *or body of the notice* . . . ."  FED. R. APP. P. 3(c)(1)(A) (emphasis added).  Although the Second Circuit has construed this requirement strictly, *see, e.g., Agee v. Paramount Communications, Inc.,* 114 F.3d 395, 399-400 (2d Cir. 1997), the court is not aware of any case law indicating that the party taking the appeal must be named in the caption as well as the body of the notice.  Therefore, should Aretakis wish to appeal, he may do so without need for amendment of the caption.  The court denies his requests to stay enforcement of the sanctions and waive the posting of a bond.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that pursuant to Rule 11 of the Federal Rules of Civil Procedure and the court's inherent authority, **John A. Aretakis, Esq.** is

44

**Sanctioned** as follows:

(1) Within twenty (20) days of the date of this order, he is directed to pay attorney's fees and costs to the Church defendants in the amount of $10,000.00;

(2) Within twenty (20) days of the date of this order, he is directed to pay attorney's fees and costs to the Federal defendants in the amount of $2,368.26; and

(3) Mr. Aretakis is verbally warned that in any future litigation before this court, should he violate Rule 11 or engage in any conduct unsupported by a good faith legal or factual basis, such as filing frivolous and baseless motions for recusal, the court will consider the imposition of monetary judicial sanctions; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties, and it is further

**ORDERED** that the Clerk transmit a copy of this Decision and Order to: The Honorable Norman A. Mordue, Chief Judge of the Northern District of New York; Lawrence K. Baerman, District Court Clerk; and Ms. Barbara Davis, Executive Director of the Albany County Bar Association and Officer-in-Charge of the Legal Referral and Pro Bono Program, and it is

further

**ORDERED** that the following motions of Tina Zlotnick and John A. Aretakis (Dkt. No. 33) are **DENIED**:  recusal of the court; reconsideration of the court's September 6, 2007, order; a stay of enforcement of this sanctions order pending appeal; amendment of the caption; and a waiver of a bond pending appeal.

**IT IS SO ORDERED.**

August 18, 2008
Albany, New York

Gary L. Sharpe
U.S. District Judge

46